IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | | |
|---|---|---|
| KOFI OWUSU-BOAKYE, | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | **Case No. 1:18-cv-1344** |
| WILLIAM BARR, | ) | |
| Attorney General of the United | ) | |
| States, *et al.*, | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter arises from the final decision of the Board of Immigration Appeals ("BIA") affirming the United States Citizenship & Immigration Services' ("USCIS") decision to deny plaintiff's I-130 alien relative petition to grant a visa to plaintiff's spouse. In short, BIA and USCIS justified the denial of plaintiff's petition on the ground that there was substantial and probative evidence that plaintiff's spouse had previously entered into a fraudulent marriage for the purpose of evading immigration law and was thus ineligible for an immediate relative visa. In the Amended Complaint, plaintiff has challenged BIA's decision on several grounds, and the parties have each moved for summary judgment on plaintiff's claims.

### I.

The Administrative Procedure Act ("APA")[1] confines judicial review of agency decisions to the administrative record of proceedings before the pertinent agency. *See* 5 U.S.C. § 706; *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973). Put another way, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Given the district court's limited role in

---

[1] 5 U.S.C. § 701 *et seq.*

reviewing the administrative record, courts have noted that the usual summary judgment standard does not apply in cases where a district court exercises review of a final agency action under the APA. *See, e.g.*, *Spelman v. McHugh*, 65 F. Supp. 3d 40, 44 (D.D.C. 2014). The key difference in an APA case is that "all relevant facts are contained in the administrative record for such a case, and, as a result, there are no material facts in dispute." *Maine v. Norton*, 257 F. Supp. 2d 357, 363 (D. Me. 2003). Therefore, in a review of agency action under the APA, "[t]he 'entire case' on review is a question of law." *Am. Bioscience, Inc.*, 269 F.3d at 1083.

The administrative record pertaining to plaintiff's underlying proceedings before BIA and USCIS reflects the following relevant facts.

- Auddismart Adubofour is a citizen and national of Ghana. Adubofour was admitted to the United States on August 16, 2001, on a temporary visitor visa that was set to expire on February 15, 2002.

- Over a year after the expiration of her authorized stay, on July 29, 2003, Adubofour married a man named Lennard King. They were married by a Civil Magistrate at the Arlington County, Virginia Courthouse, over fifty miles away from their residence in Pikesville, Maryland. And on that same day, Adubofour submitted herself to a detailed medical examination that would allow her to apply for immigration benefits.

- Two days after their marriage, on July 31, 2003, King submitted to USCIS an I-130 alien relative petition on Adubofour's behalf. On the same date, Adubofour submitted to USCIS an application seeking to adjust her status to that of lawful permanent resident. USCIS approved King's alien relative petition on January 22, 2004.

- On March 17, 2008, USCIS issued to King a Notice of Intent to Revoke ("NIR") its prior approval of the alien relative petition. In that NIR, USCIS first noted that it believed that the "petition may have been approved in error," because the agency had "reason to suspect that [King's] marriage to . . . Adubofour is a sham marriage, entered into solely for immigration purposes." USCIS informed King that he had sixty days to submit any rebuttal to the NIR, including any evidence in support of such a rebuttal. The NIR listed and summarized, *inter alia*, the following information and reasoning supporting its intention to revoke the alien relative petition based on the conclusion that King and Adubofour's marriage was fraudulent.

  o One fact noted by USCIS as a reason for suspecting the marriage was not *bona fide* was that King and Adubofour had "failed to submit credible evidence of commingling of [their] assets." Among other reasons, this conclusion was supported by the fact that King and Adubofour had entered into two purported apartment rental leases that were terminated within one month's time. Adubofour

also could not remember the address of one of these latter rentals when questioned in January 2008.

- o In addition, USCIS noted that public records reflected that King's address of record remained in Lanham, Maryland, notwithstanding his statement to USCIS officials that he resided in Germantown, Maryland with Adubofour. Thus, USCIS stated, there was not "credible evidence to establish that [King] and [Adubofour] maintained a shared household."

- o Finally, USCIS explained that in January 2008, the agency had summoned both King and Adubofour to USCIS's Baltimore Field Office for independent sworn interviews. USCIS detailed dozens of inconsistent answers that King and Adubofour provided to the same questions about each other and their relationship. For example, Adubofour testified that King did "not have any distinguishing features, such as tattoos," whereas King testified that he had "three (3) tattoos, one on each arm." Adubofour also testified that she and King did "not have a jointly held mutual checking or savings account," whereas King identified such a jointly held account.

- On May 12, 2008, King responded to the NIR through a letter consisting of a single page of three short paragraphs. In essence, King declared that his marriage to Adubofour was legitimate and blamed the various inconsistencies on his incarceration "during most of [their] marriage," but did not submit any additional evidence in support of this position.

- King and Adubofour's marriage officially ended through the entry of a divorce decree on January 9, 2009.

- On June 18, 2009, after considering King's response along with the remaining record, USCIS issued its final decision revoking its prior approval of King's alien relative petition. USCIS explained that King's rebuttal was not corroborated by any independent, objective evidence and "failed to address several of the discrepancies" that USCIS noted in the NIR. In addition, USCIS explained that the regulations mandated the automatic revocation of a grant of an alien relative petition if the beneficiary and the petitioner are divorced before a final adjudication of the beneficiary's application for adjustment of status.

- Although USCIS informed King that he could appeal the revocation of his petition to BIA, the record does not reflect that King sought any further review of USCIS's revocation.

- On March 14, 2009, two months after her divorce from King was officially decreed, Adubofour married plaintiff at a church located in Woodbridge, Virginia.

- On May 6, 2009, plaintiff submitted to USCIS a new I-130 alien relative petition on Adubofour's behalf, and Adubofour simultaneously submitted a new application to adjust her status to that of lawful permanent resident.

- On July 16, 2013, USCIS issued to plaintiff a Notice of Intent to Deny ("NID") his alien relative petition, explaining that it appeared that Adubofour's previous marriage to King was a sham marriage entered into solely to procure immigration benefits, which rendered Adubofour ineligible for immigration benefits under federal statute. USCIS provided plaintiff with thirty days to respond to the NID with any rebuttal and supporting evidence. The NID listed and summarized, *inter alia*, the following information and reasoning that

supported USCIS's intention to deny the alien relative petition based on the conclusion that Adubofour's previous marriage was fraudulent.

- o USCIS again noted the inconsistent answers that King and Adubofour provided in their independent interviews with agency officials in January 2008 in response to questions about King's tattoos, their alleged then-current residence, the existence of joint bank accounts, and where their wedding bands were purchased. USCIS also again noted that the short lease terms for rental properties submitted by King and Adubofour failed to constitute credible evidence of commingling of assets or a shared residence.

- o USCIS also summarized the sworn statements that King had provided in an interview with agency officers in April 2013. In that interview, King acknowledged in writing that he was giving testimony to a federal official under oath and that his statements were truthful. The NID explained that King had admitted that, he had never resided in Germantown, Maryland (contrary to the prior statements he and Adubofour made to USCIS in January 2008), he never told anyone in his family about his marriage to Adubofour when it occurred (and only told his mother and brother later), and he had no explanation for Adubofour's lack of knowledge about his tattoos.

- o Finally, USCIS noted that public records reflected that in May 2004 King had listed his official address as his mother's house in Lanham, Maryland.

- Plaintiff, through counsel, submitted a response to USCIS's NID on August 13, 2013. In addition to a narrative response, plaintiff submitted additional evidence, including a declaration from Adubofour.

  - o Plaintiff's narrative response conceded that King and Adubofour "did not completely move in with one another," but alleged that this was the result of near immediate marital difficulties and that the couple "spent many nights together." Plaintiff also argued that any inconsistencies in King and Adubofour's statements to USCIS stemmed from the fact that marital and legal problems caused them to be apart. Plaintiff also argued that statements from King's April 2013 interview with USCIS reflected merely that the couple had marital problems and not that they schemed to evade immigration laws. In addition, plaintiff attacked King's statements as "highly unreliable."

  - o Adubofour's declaration provided that she got married at the Arlington County Courthouse in Virginia because that was the only courthouse of which she was aware, and that other friends had gotten married there. Adubofour also testified that she obtained her medical examination on her wedding day "because [they] traveled to Virginia anyway for the marriage." Adubofour also attributed the discrepancies in her and King's testimony to their marital difficulties; with respect to a number of inconsistencies between her and King's answers to the same questions in January 2008, Adubofour testified that King simply must have been "incorrect."

- On September 24, 2013, USCIS issued a detailed decision denying plaintiff's alien relative petition on the grounds that there was "substantial and probative evidence" that Adubofour and King's marriage was fraudulent and that plaintiff had not sufficiently rebutted that

evidence. After reciting the allegations in the NID, USCIS listed the following reasons, and information supporting those reasons, for its decision to deny plaintiff's petition.

- o USCIS explained that plaintiff had not provided a plausible explanation for the many inconsistencies in the record evidence. For example, USCIS noted that plaintiff did not explain why King provided only a single page response to USCIS's March 2008 NIR, and that the explanation provided for the short-term nature of their leases (that Adubofour did not notice it) and for Adubofour's statement that King did not have tattoos (that he did not have such tattoos when they were dating) was not reasonable. With respect to the latter, USCIS noted that King had obtained one of those tattoos in 2001, well before he and Adubofour allegedly began dating.

- o USCIS also concluded that based on her new affidavit regarding the couple's living situation at that time, Adubofour had misrepresented to the agency that she and King were living together in January 2008.

- Plaintiff noticed an appeal from USCIS's denial of his alien relative petition to BIA.

- After full briefing, on October 2, 2014, BIA held that it did not agree that the particular record that was then before it "contains substantial and probative evidence supporting [USCIS's] marriage fraud determination," such as a "confession from [King]." Thus, BIA ordered USCIS to approve the alien relative petition.

- On May 7, 2015, USCIS issued plaintiff an NIR, which advised plaintiff that USCIS intended to revoke its approval of his alien relative petition that had been ordered by BIA. The NIR explained that USCIS determined Adubofour's marriage to King was fraudulent based on (i) evidence listed by USCIS in the September 2013 decision denying plaintiff's petition and (ii) a new interview between USCIS officers and King that USCIS had obtained after plaintiff had appealed its decision to BIA. USCIS explained that in this interview, King admitted under oath that his marriage to Adubofour was fraudulent. USCIS summarized King's sworn affidavit and attached it to the NIR for plaintiff's review. The affidavit stated as follows:

> Eric approached me at the mall in Virginia and asked if I wanted to make some money. I drove to the Arlington Courthouse on my own, met Eric there, and met [Adubofour] for the first time. [Adubofour] gave me the money, $2500 in cash via Eric. I got paid another $500 at the interview, and an additional $500. I never lived with [Adubofour]. I was living on Timber Lane in [Lanham,] Maryland. I never had sex with [Adubofour]. This was a business arrangement with [Adubofour]. I did not intend to be with her in a marriage. I wasn't told why we were getting married, I thought it was for citizenship.

USCIS explained that King's admissions that he was paid money to marry Adubofour and that it was "a business arrangement" demonstrated that their marriage was a sham. USCIS also noted that King's admission was supported by other record evidence reflecting that King and Adubofour never lived together and never held themselves out as husband and wife. USCIS provided plaintiff with thirty (30) days within which to submit any rebuttal to the NIR, including any evidence in support of that rebuttal.

- Plaintiff responded to the NIR on June 8, 2015. That response asked USCIS to view the record evidence in its entirety, called King's credibility into question based on inconsistencies with King's prior statements, and questioned the legitimacy of the new interview with King as it did not take place at USCIS offices. Plaintiff also included an additional affidavit from Adubofour.

- On September 3, 2015, USCIS issued a decision revoking its prior approval of plaintiff's alien relative petition. After reiterating the reasons and supporting evidence detailed in the May 2015 NIR, USCIS addressed plaintiff's rebuttal arguments. In particular, USCIS noted that there is no regulation or policy mandating that interviews only take place at agency offices, and that the new interview of King took place near his place of work. USCIS also discounted plaintiff's arguments regarding King's credibility because it appeared that King had decided to be truthful after being confronted again with the numerous inconsistencies in the record about his marriage to Adubofour. Finally, USCIS noted that it was not just relying on King's sworn confession, but that the record contained other record evidence, repeatedly summarized in prior notices and decisions, that corroborated that confession.

- Plaintiff noticed an appeal from USCIS's revocation to BIA. After full briefing, BIA affirmed USCIS's revocation of plaintiff's immediate relative petition. In pertinent part, BIA held as follows:

  > [The] new affidavit from Mr. King, admitting against his own interests to marrying the beneficiary for money, considered in conjunction with the prior evidence of record, qualifies as good and sufficient cause to revoke the visa petition.

  BIA rejected plaintiff's argument that King's affidavit was unreliable because there was no "persuasive explanation of why [King] would falsely confess to marrying the beneficiary for money, especially in light of the possible penalties for 'any individual' committing marriage fraud." Finally, BIA rejected plaintiff's argument that the Due Process Clause required USCIS to discard King's affidavit, holding that there is "no requirement under [federal statute] or the regulations that a petitioner must be permitted to cross-examine an affiant," and that plaintiff had not demonstrated any prejudice from the inability to cross-examine King.

- Plaintiff thereafter moved BIA for reconsideration, arguing primarily that there was no evidence in the record that King knew of the possible penalties for marriage fraud when he confessed that his marriage to Adubofour was a sham. After briefing, BIA issued a decision that rejected plaintiff's arguments on the ground that there was still no "persuasive explanation of why . . . King would falsely confess to marrying the beneficiary for money."

- On August 30, 2016, plaintiff submitted a third alien relative petition on behalf of Adubofour.

- On May 20, 2017, USCIS issued to plaintiff a NID on this third petition. The NID summarized the same reasons and supporting evidence that USCIS and BIA had previously identified as constituting "substantial and probative evidence" that Adubofour's marriage to King was fraudulent. In addition, USCIS explained that an Immigration and Customs Enforcement ("ICE") investigation had discovered the individual identified in King's final

sworn affidavit, Eric Amoah, ran a marriage fraud conspiracy that facilitated numerous "sham marriages between Ghanaian citizens and United States citizens." USCIS's own investigation revealed that the marriage between Adubofour and King was facilitated by Amoah as part of this marriage fraud ring. USCIS also noted that Amoah and twenty-two other individuals had been criminally convicted in the Eastern District of Virginia for participating in this marriage fraud conspiracy.

- Plaintiff submitted a response to USCIS's NID on June 21, 2017, including a new affidavit from an individual named Maxwell Boachie, who claimed to be Adubofour's uncle. That affidavit explained that he visited the couple on one occasion in the summer of 2003, and that from his perspective, King and Adubofour were, during that visit, "still very much in love."

- USCIS issued its decision on plaintiff's third alien relative petition on July 31, 2017, in which it again denied the petition on the ground that King and Adubofour's marriage was fraudulent for the same reasons explained in its earlier decisions. USCIS also concluded that Boachie's new affidavit carried little weight on the issue of the legitimacy of the prior marriage because it provided no details concerning Adubofour and King's prior relationship. Rather, Boachie's opinion was based almost exclusively on a single interaction that he had with the couple in the summer of 2003.

- Plaintiff again appealed USCIS's denial to BIA. After full briefing, BIA again rejected plaintiff's arguments and affirmed USCIS's denial of plaintiff's alien relative petition. BIA once again held that there was no legitimate ground on which to eliminate consideration of King's final sworn affidavit, explaining that "there is no right to cross-examine an affiant in visa petition proceedings." Additionally, BIA rejected plaintiff's position that the various inconsistencies between Adubofour and King's statements about their relationship were not probative of marriage fraud. BIA summarized its holding as follows:

> We agree with [USCIS] that there is substantial and probative evidence that the beneficiary and her prior husband, Mr. King, married to evade immigration laws. In particular, Mr. King signed a sworn statement on February 6, 2014, admitting that he married the beneficiary for money and did not live with her. Furthermore, as set forth in the Director's decision, ... investigators found that the marriage between the beneficiary and Mr. King was facilitated by Mr. Eric Amoah and [was] part of a large-scale marriage fraud ring. The Director noted that in October 2006, Mr. Amoah was convicted of conspiracy to commit immigration fraud and conspiracy to commit money laundering and sentenced to 45 months in prison.

## II.

Pursuant to the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In this respect, the reviewing court is limited to examining "whether the agency conformed with controlling statutes, and whether the

agency has committed a clear error of judgment." *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 263 (4th Cir. 2006) (internal quotation marks omitted). The scope of this review is "narrow," as "[t]he court is not empowered to substitute its judgment for that of the agency." *Id.* Indeed, review of agency action under the APA is "highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citation omitted).[2] Accordingly, "[t]he agency action will stand if the record reveals a rational basis for the decision." *Oddo v. Reno*, 175 F.3d 1015 at *2–3 (4th Cir. 1999) (citing *Trinity Am. Corp. v. United States EPA*, 150 F.3d 389, 395 (4th Cir.1998)).

It is therefore necessary to set out the statutory and regulatory framework that governs the adjudication by USCIS and BIA of petitions brought by United States citizens seeking the issuance of an immigrant visa for their relatives.

In order to immigrate legally to the United States, an alien must generally obtain some form of an immigration visa. *See generally* 8 U.S.C. §§ 1151–54. One way to obtain an immigration visa is through the successful petition of a spouse who is already a United States citizen. *See id.* § 1151(b)(2)(A)(1). Specifically, the citizen-spouse must file an I-130 petition with USCIS requesting that the agency classify the alien as an immediate relative of the citizen-spouse. *See id.* § 1154(a); 8 C.F.R. § 204.1(a)(1). The citizen-spouse must submit sufficient evidence along with the petition to prove, *inter alia*, "the claimed relationship of the petitioner [citizen] to the

---

[2] Plaintiff argues, incorrectly, that only "modest deference" is owed to BIA's action here because a single-member panel of BIA affirmed USCIS's denial of plaintiff's petition. To be sure, when a single-member BIA decision interprets the INA and any attendant regulations, its statutory interpretations are entitled only to "modest deference"—and not to full *Chevron* deference—because a single-member, non-precedential opinion does not constitute the exercise of BIA's authority to make a rule carrying the force of law. *Martinez v. Holder*, 740 F.3d 902, 909 (4th Cir. 2014). But plaintiff's appeal of BIA's decision does not challenge BIA's interpretation of any statute for which Congress conferred rule-making power on BIA. Thus, whether BIA is entitled to *Chevron* deference or mere "modest deference" is altogether not in issue here. Instead, in accordance with settled Fourth Circuit precedent, BIA is entitled to the "highly deferential" standard of review accorded to agency action under the APA. *See Ohio Valley Envtl. Coal*, 556 F.3d at 192.

beneficiary [alien]." 8 C.F.R. § 204.1(f)(1). USCIS, on behalf of the Attorney General, then must conduct "an investigation of the facts in each case" to determine whether to grant the petition. 8 U.S.C. § 1154(b). If USCIS "determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative," then the Attorney General "shall . . . approve the petition." *Id.*

On the other hand, USCIS must deny an I-130 petition if it determines that the beneficiary of that petition has at any time entered into a fraudulent marriage in order to obtain an immigration visa, regardless of the legitimacy of the beneficiary's current marriage. *Id.* § 1154(c); *Osakwe v. Mukasey*, 534 F.3d 977, 979 (8th Cir. 2008). In particular, the regulations provide that USCIS must "deny a petition for immigrant visa classification . . . [when] there is *substantial and probative evidence*" that the alien beneficiary "has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 C.F.R. § 204.2(a)(1)(ii) (emphasis added). To find "substantial and probative evidence" that a marriage was established for the purpose of evading the immigration laws, USCIS "may rely on any relevant evidence, including evidence having its origin in prior [USCIS] proceedings involving the beneficiary." *Matter of Tawfik*, 20 I. & N. Dec. 166, 168 (B.I.A. 1990).

If USCIS finds any information related to marriage fraud, the regulations require USCIS to issue the petitioner a written Notice of Intent to Deny ("NID") which must "specify . . . the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond." 8 C.F.R. § 103.2(b)(8)(iv). In addition, the NID must advise the petitioner of "derogatory information considered by the Service . . . of which the applicant or petitioner is unaware." *Id.* § 103.2(b)(16)(i). Yet importantly, the regulations do not "require USCIS to provide documentary evidence of the [derogatory] information, but only sufficient information to allow

9

the petitioners to rebut the allegations." *Mangwiro v. Johnson*, 554 Fed. App'x 255, 261 (5th Cir. 2014). In this respect, courts have concluded that an NID complies with this obligation by "summariz[ing] the contents" of evidence probative of marriage fraud. *Ghaly v. I.N.S.*, 48 F.3d 1426, 1434 (7th Cir. 1995); *see also, e.g.*, *Diaz v. U.S. Citizenship & Immigration Servs.*, 499 F. App'x 853, 855 (11th Cir. 2012); *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010); *Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009). The petitioner then has an "opportunity to rebut the information and present information in his/her own behalf before the decision is rendered." 8 C.F.R. § 103.2 (b)(16)(i). After receiving the petitioner's evidence, USCIS then decides whether to approve or deny the petition. *Id.* § 204.2(a)(1)(ii).

In addition, the regulations provide that even after approving an I-130 petition, USCIS "may revoke the approval of that petition" when new evidence comes to the attention of USCIS that calls into question its earlier decision. *Id.* § 205.2(a). Before revoking a previously approved I-130 petition, USCIS must issue a Notice of Intent to Revoke ("NIR") to the petitioner and must give the petitioner "the opportunity to offer evidence in support of the petition . . . and in opposition to the grounds alleged for revocation of the approval." *Id.* § 205.2(b). If, after receiving the petitioner's response, USCIS decides to revoke the previously approved I-130 petition, USCIS must "provide the petitioner . . . with a written notification of the decision that explains the specific reasons for the revocation." *Id.* § 205.2(c).

If USCIS denies an I-130 petition or revokes a previous approval of an I-130 petition, the petitioner may appeal the decision to BIA. *See id.* § 1204.1. On appeal, BIA reviews USCIS's denial of an I-130 petition *de novo*. *Id.* § 1003.1(d)(3)(iii).

**A.**

Plaintiff first argues that there was not "substantial and probative evidence" to support USCIS and BIA's determination that Adubofour's previous marriage to King was established for the purpose of evading the immigration laws. This argument fails because the record evidence reflects that USCIS and BIA's factual conclusions were reasonable and more than amply supported in the record. And moreover, given the well-settled deferential standard of review, USCIS and BIA's finding of marriage fraud must be confirmed.

Under the APA, a reviewing court may set aside an agency's dispositive factual findings that are not supported by "substantial evidence." *Chao v. Sessions*, 698 F. App'x 751, 752 (4th Cir. 2017) (citing 5 U.S.C. § 706(2)(E)). As the Fourth Circuit has explained, this deferential "substantial evidence" test "mandates affirmance if the evidence is not so compelling that no reasonable factfinder could agree" with the agency's factual conclusions. *Gandziami-Mickhou v. Gonzales*, 445 F.3d 351, 354 (4th Cir. 2006) (internal quotations omitted). In this regard—as is true with respect to the entirety of a district court's review of agency action—the reviewing court "is not empowered to substitute its judgment for that of the agency." *Holly Hill Farm Corp.*, 447 F.3d at 263. Indeed, another court in this district cogently described the nature of the reviewing court's scrutiny of USCIS and BIA's factual finding of marriage fraud in an I-130 adjudication by explaining that "it is not the province of this Court to determine whether substantial and probative evidence of marriage fraud actually exists in the record—that would constitute improper *de novo* review." *Armah-El-Aziz v. Zanotti*, No. 1:15-CV-261 JCC/MSN, 2015 WL 4394576, at *6 (E.D. Va. July 16, 2015). Rather, the "substantial evidence" test examines only whether "the agency acted arbitrarily, capriciously, or not in accordance with law when it concluded that substantial and probative evidence of marriage fraud existed in the record." *Id.*

Here, the record evidence clearly contains substantial evidence to support USCIS and

BIA's factual determination that King and Adubofour's marriage was entered into for the purpose

of evading the immigration laws. Indeed, two key items of evidence relied upon by USCIS and

BIA in denying plaintiff's I-130 petition more than amply demonstrate that a reasonable factfinder

could agree with USCIS and BIA's conclusion. First, King admitted in a sworn statement to USCIS

officials that he married Adubofour in exchange for money, that he did not live with her during

their marriage, and that they never consummated their marriage.[3] Second, USCIS and ICE

investigators discovered that King and Adubofour's marriage was facilitated by Eric Amoah as

part of a large-scale marriage fraud ring. Courts have sensibly concluded that this type of evidence

constitutes substantial evidence to support a finding of marriage fraud. *See, e.g.*, *Pauliukoniene v.*

*Holder*, 496 F. App'x 657, 660 (7th Cir. 2012) (evidence that marriage was facilitated by marriage

---

[3] Plaintiff, citing *Matter of Tawfik*, 20 I. & N. Dec. at 168, argues that King's sworn statement confessing that he married Adubofour in exchange for money, that he did not live with her during their marriage, and that they never consummated their marriage creates only a reasonable inference of marriage fraud, which does not rise to the level of substantial and probative evidence requisite to the preclusion of approval of a visa petition. This argument plainly fails because King's statement creates more than an inference of marriage fraud; it constitutes direct evidence than the marriage was a sham. To be sure, as plaintiff correctly notes, King did not state in as many words that Adubofour's purpose for marrying him was to circumvent immigration laws. But it is well-settled that for purposes of determining whether there is substantial evidence that a marriage was established to evade immigration law, "[a] marriage is a sham if the bride and groom did not intend to establish a life together at the time they were married." *Bu Roe v. I.N.S.*, 771 F.2d 1328, 1331 (9th Cir. 1985); *see also Matter of Laureano*, 19 I. & N. Dec. 1, 2–3 (BIA 1983) (holding that with respect to determining whether a marriage was "entered into for the primary purpose of circumventing the immigration laws . . . [t]he central question is whether the bride and groom intended to establish a life together at the time they were married"). King's confession clearly demonstrates that he did not intend to establish a life together with Adubofour when they were married and thus constitutes substantial evidence that the marriage was established to evade immigration laws.

In addition, plaintiff argues that USCIS and BIA acted arbitrarily by crediting King's confession in light of his previous statements to USCIS that his marriage to Adubofour was legitimate. This argument fails because USCIS and BIA articulated a rational, facially legitimate basis for deeming King's subsequent confession credible. Specifically, USCIS and BIA explained that King's confession to marriage fraud was reliable because (i) King made the statement against his own interest, (ii) there was no persuasive explanation of why King would falsely admit to marrying Adubofour for money, and (iii) the confession was corroborated by other evidence in the record. Accordingly, USCIS and BIA's explanations make clear that it was rational, not arbitrary, to rely on King's confession as substantial and probative evidence that Adubofour's marriage to King was a sham marriage.

12

fraud ring); *Rojas v. Johnson*, 2014 WL 12527213, at *5 (M.D. Fla. Nov. 26, 2014), *aff'd*, 675 Fed. Appx. 950 (11th Cir. 2017) (admission by putative spouse that the marriage was fraudulent).

Moreover, the record also reflects that USCIS and BIA relied on additional evidence that courts have deemed substantial to support a finding of marriage fraud. As USCIS and BIA repeatedly emphasized during the proceedings, Adubofour and King provided numerous inconsistent answers to questions about their living and financial arrangements. *See, e.g., Yu An v. Napolitano*, 15 F. Supp. 3d 976, 981 (N.D. Cal. 2014) (citing inconsistencies in testimony and documentation regarding residencies in support of the conclusion that the administrative record contained substantial evidence of marriage fraud). To be sure, BIA concluded that standing alone, these discrepancies did not amount to substantial and probative evidence of marriage fraud. But when considered along with King's admission and information concerning Amoah's marriage fraud ring, it is clear that Adubofour and King's contradictory testimony about their residential and financial arrangements further support the conclusion that there was substantial evidence to support USCIS and BIA's factual finding of marriage fraud. Indeed, in light of this persuasive evidence, a reasonable factfinder would be hard-pressed not to agree with USCIS and BIA's determination that Adubofour and King's marriage was fraudulent and entered into to evade immigration laws.

Of course, as is often true in cases in which BIA determines a marriage is fraudulent, there is also evidence in the administrative record to support the opposite conclusion, *i.e.* that Adubofour and King's marriage was *bona fide*. For example, Adubofour filed multiple declarations asserting that her previous marriage to King was legitimate, and even King, in his earlier statements to

USCIS, affirmed that he married Adubofour for valid purposes.[4] Nonetheless, it is well-settled that the mere "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm.*, 383 U.S. 607, 619 (1966). This is so because it is not for a reviewing court to exercise *de novo* review of an agency's factual findings and independently weigh contradictory evidence. *Armah-El-Aziz*, 2015 WL 4394576, at *6. Again, the standard for finding "substantial evidence" is satisfied if the evidence weighing against the agency's factual conclusions "is not so compelling that no reasonable factfinder could agree" with the agency's determination. *Gandziami-Mickhou*, 445 F.3d at 354. Here, taking into account the considerable and persuasive record evidence on which BIA and USCIS relied, a reasonable factfinder could certainly agree that Adubofour and King married in order to evade immigration laws, even in light of the contrary evidence submitted by plaintiff.

## B.

Plaintiff next argues that USCIS erred by relying on certain items of evidence, including King's sworn statement, a Statement of Findings in which a USCIS officer detailed his investigation and conclusions about Adubofour and King's marriage ("USCIS Investigation Findings"), and other files and reports related to the ICE investigation into Eric Amoah's marriage-fraud conspiracy. According to plaintiff, these items of evidence were "inadmissible" because

---

[4] Plaintiff argues vigorously that USCIS and BIA arbitrarily ignored plaintiff's evidence that Adubofour's marriage to King was legitimate. This argument fails because the record evidence reflects that USCIS and BIA carefully considered each of plaintiff's arguments and supporting evidence and that USCIS and BIA articulated a rational, facially legitimate basis for determining that plaintiff's evidence did not outweigh the substantial evidence of marriage fraud. For instance, USCIS and BIA assigned little weight or credibility to Adubofour's affidavit that her marriage with King was *bona fide* on the ground that Adubofour's description of the nature of their marriage contradicted prior testimony that she had given to USCIS. As another example, USCIS and BIA explained that little weight was due to the affidavit by Boachie, Adubofour's uncle, stating that King and Adubofour appeared to be in love because that description was based on a single, brief interaction with the couple and thus provided little information about the nature or legitimacy of their relationship. Accordingly, it is clear that USCIS and BIA did not act arbitrarily by declining to rely on plaintiff's evidence that Adubofour's prior marriage to King was not a sham.

USCIS (i) did not produce a copy of the USCIS Investigation Findings or the ICE investigation materials to plaintiff and (ii) did not provide plaintiff with an opportunity to cross-examine the authors of these documents or King. This argument fails because the regulations do not require USCIS to produce the evidence or witnesses on which it intends to rely.

The regulations governing a petitioner's right to inspect evidence related to the adjudication of an I-130 petition provide as follows.

> (16) Inspection of evidence. An applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, except as provided in the following paragraphs.
>
>> (i) Derogatory information unknown to petitioner or applicant. If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered . . . .
>>
>> (ii) Determination of statutory eligibility. A determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner . . . .

8 C.F.R. § 103.2(b)(16). The plain language of this section makes clear that USCIS is not required to provide a petitioner with the opportunity to inspect the actual evidence or to cross-examine witnesses. Subsection (i) requires USCIS to "advise[]" the petitioner of derogatory "information" upon which USCIS intends to base its decision to deny a petition and of which the petitioner is not aware. *Id.* § 103.2(b)(16)(i). And subsection (ii) provides that USCIS must "disclose[]"[5] to the petitioner any "information" upon which USCIS relies to make its decision. *Id.* § 103.2(b)(16)(ii). Thus, under the regulations, in an adjudication of an I-130 petition USCIS must disclose and advise the petitioner of adverse "information" and "information" upon which it relies, but the petitioner

---

[5] The requirement in subsection (ii) to "disclose" information obligates the agency to "mak[e] known" to the petitioner the information upon which the agency relied in reaching its decision; this disclosure requirement "does not impose a duty upon the government to produce copies of all the evidence relied on in USCIS' decisions." *Mattson v. Kelly*, No. 315CV00182LRHWGC, 2017 WL 4102463, at *8 (D. Nev. Sept. 14, 2017).

is not entitled to production of or access to the evidence or witnesses that constitute the basis of such "information."

Several courts of appeal have confirmed this interpretation by concluding that in denying an I-130 petition for an immediate relative visa, USCIS satisfies the requirements in § 103.2(b)(16) by "listing" or "summarizing" the information upon which USCIS relied in denying a petition. *See, e.g., Ogbolumani*, 557 F.3d at 735; *Ghaly*, 48 F.3d at 1434; *see also Zizi v. Field Office Dir.*, 753 F. App'x 116, 117 (3d Cir. 2019); *Sehgal v. Lynch*, 813 F.3d 1025, 1031–32 (7th Cir. 2016); *Mangwiro*, 554 F. App'x at 261–62; *Diaz*, 499 F. App'x at 856; *Hassan*, 593 F.3d at 789. Thus, it is clear that the regulations governing the procedure by which USCIS denies an I-130 petition do "not require [USCIS] to provide 'actual documents,'" much less the documents' authors, to the petitioner for inspection or cross-examination. *Zizi*, 753 F. App'x at 117; *Mangwiro*, 554 F. App'x at 261–62.[6]

These authorities confirm that USCIS did not err in admitting and relying on information contained in King's sworn statement, the USCIS Investigation Findings, or materials related to the investigation of Amoah's marriage fraud ring. The administrative record, summarized above,

---

[6] Seeking to avoid this conclusion, plaintiff cites a series of cases concluding that the immigration court in a *removal* proceeding may not admit evidence against an alien unless the alien has the opportunity to inspect the evidence against him or her and to cross-examine any adverse witnesses. *See, e.g., Hammad v. Holder*, 603 F.3d 536, 545 (9th Cir. 2010); *Cinapian v. Holder*, 567 F.3d 1067, 1075 (9th Cir. 2009); *Young Sun Shin v. Mukasey*, 547 F.3d 1019, 1024 (9th Cir. 2008); *Saidane v. I.N.S.*, 129 F.3d 1063, 1065 (9th Cir. 1997). These cases are inapposite; they are neither controlling nor persuasive here because they involve *removal* proceedings, with respect to which Congress has specifically provided that an alien in a *removal* proceeding "shall have a reasonable opportunity to examine the evidence against the alien . . . and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4). In contrast, as already discussed, the regulations make clear that in an adjudication of an I-130 immediate relative visa petition before USCIS, the petitioner is entitled only (i) to be advised of derogatory information upon which USCIS intends to rely and of which the petitioner is unaware and (ii) to disclosure of information upon which USCIS ultimately bases its determination of eligibility for a visa. *Id.* § 103.2(b)(16). Thus, because plaintiff has cited no basis for the conclusion that a petitioner in an administrative adjudication of an I-130 petition has the right to inspect evidence or cross-examine witnesses, plaintiff's argument fails. *See Avitan v. Holder*, 2011 WL 499956, at *8 (N.D. Cal. Feb. 8, 2011) (citations omitted) ("Plaintiff has not pointed to any statutory provision or regulation that affords a petitioner the right to a formal hearing in which evidence may be presented and witnesses cross-examined. To the contrary, the statutory provisions Congress has enacted for visa determinations do not require formal adjudicatory hearings for visa petitions.").

*supra* part I, makes clear that USCIS complied with the regulations governing plaintiff's right to inspect evidence. First, in each NID and NIR, USCIS properly "advised" plaintiff of the derogatory information upon which USCIS intended to rely by listing and summarizing that information. For example, USCIS repeatedly described for plaintiff the substance of King's sworn confession, and USCIS also informed plaintiff that an ICE investigation had concluded that King and Adubofour's marriage had been facilitated by Amoah's marriage fraud ring. These summaries were sufficient to enable plaintiff to attempt to rebut the information by submitting contrary and exonerating evidence to USCIS. And second, in each decision denying plaintiff's petition, USCIS and BIA properly "disclosed" the information upon which USCIS and BIA had relied to determine Adubofour was statutorily ineligible for a visa, again, by listing and summarizing that information in the decisions. Thus, USCIS and BIA complied with their regulatory obligations by providing plaintiff with detailed summaries at each stage of the proceeding of information upon which USCIS and BIA were relying; USCIS and BIA were not required to produce for plaintiff's inspection or cross-examination the actual documents or witnesses from which that information was sourced.

## C.

Lastly, plaintiff argues that USCIS violated plaintiff's due process right by relying on evidence, including King's sworn statement and the USCIS Investigation Findings, without providing plaintiff an opportunity to cross-examine the authors of those documents or to inspect the USCIS Investigation Findings. This argument fails because plaintiff has not demonstrated that USCIS and BIA failed to provide plaintiff with due process during the adjudication of plaintiff's I-130 petition.

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend V. Thus, to demonstrate a violation of a procedural due process right, plaintiff must first demonstrate that he or she was deprived of a protected liberty or property interest by the government and second that the procedures attendant upon that deprivation were not constitutionally sufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Here, plaintiff claims that he has a protected liberty interest in residing with his spouse in the United States, which the government hindered when USCIS and BIA denied plaintiff's I-130 petition. In support of this assertion, plaintiff cites in cursory fashion the Supreme Court's decision in *Loving v. Virginia*, 388 U.S. 1 (1967), which famously held that the State cannot deprive an individual of the fundamental right to marry a person of his or her choice without due process of law. But the constitutional right recognized in *Loving* has not been infringed by the government here; USCIS and BIA's denial of plaintiff's I-130 petition has not deprived plaintiff of the freedom to marry Adubofour. Indeed, in the substantive due process context, courts have rejected the theory that an individual pursuing an I-130 petition "has a fundamental right to reside in the United States with his non-citizen relatives" because such a right "runs headlong into Congress' plenary power over immigration" and because "the generic right to live with family is 'far removed' from the specific right to reside in the United States with non-citizen family members." *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 330 (2018). Thus, to read *Loving* and other cases recognizing the fundamental right of marital choice as standing for the proposition plaintiff contends, *i.e.* that an individual has a protected liberty interest in residing with an alien spouse in the United States, is a bridge too far.

Moreover, it appears that the Supreme Court has not yet settled the question whether a citizen has a constitutionally protected liberty interest in residing in the United States with his or her non-citizen spouse. In *Kerry v. Din*, 135 S. Ct. 2128, 2135 (2015), a plurality of the Supreme Court rejected the argument that denial of a petitioner's immediate relative visa petition triggers due process protections on the ground that there is no constitutionally protected liberty interest in living in the United States with one's alien spouse. Justice Scalia, who authored the plurality opinion, explained with characteristic brevity and lucidity that there is no fundamental liberty interest in residing with one's alien spouse in the United States because the existence of such a liberty interest is not "supported by 'this Nation's history and practice.'" *Id.* at 2135 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 723–24 (1997)). To the contrary, Justice Scalia observed, there is "a long practice of regulating spousal immigration [which] precludes Din's claim that the denial of Berashk's visa application has deprived her of a fundamental liberty interest." *Id.*

But Justice Kennedy, with whom Justice Alito joined, concurred in the plurality's judgment in *Kerry* on a narrower ground. Specifically, Justice Kennedy concluded that it was not necessary to decide whether the plaintiff had a constitutionally protected liberty interest because the notice she received with respect to the denial of her husband's visa application was sufficient to satisfy due process. *Id.* at 2139 (Kennedy, J., concurring in the judgment).

The four remaining Justices in *Kerry* dissented, concluding that the plaintiff should prevail on her constitutional claim. *Id.* at 2142 (Breyer, J., dissenting). Specifically, the dissent emphasized that the plaintiff sought "*procedural,* not *substantive,* protection" under the Due Process Clause, and thus the plaintiff was required to demonstrate a "liberty interest," and not a "fundamental right," to live with her husband in the United States. *Id.* (emphasis in original). In this respect, the dissent argued that there is such a liberty interest because (i) the freedom to live

with one's spouse in the United States is "sufficiently important for procedural protection to flow implicitly from . . . the Due Process Clause" and (ii) the law "creates an expectation that a person will not be deprived" of that freedom "without fair procedures." *Id.* (internal quotations and alterations omitted). Thus, the dissent concluded that the deprivation of plaintiff's freedom to live with her husband in the United States entitled her to procedural protections under the Due Process Clause.

Accordingly, it remains unresolved whether a person has a liberty interest in residing with his or her alien spouse in the United States such that deprivation of that liberty entitles that person to due process protections. In any event, it is unnecessary to reach or decide this question here because it is clear that, even assuming *arguendo* that plaintiff has a constitutionally protected liberty interest in residing with his alien spouse in the United States, USCIS and BIA's adjudication of his I-130 petition did afford plaintiff adequate procedural protections. At bottom, due process requires only "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quotation omitted). In this respect, in the wake of *Kerry*, the vast majority of courts have held that, even assuming a plaintiff who has filed an I-130 visa petition on behalf of his or her spouse has a liberty interest in residing in the United States with his or her spouse, USCIS and BIA satisfy due process in their adjudication of the I-130 petition by (i) issuing an NID or NIR that lists, in detailed fashion, the reasons why USCIS intends to deny the petition, (ii) giving the petitioner an opportunity to present evidence to attempt to persuade USCIS to grant the petition, and (iii) issuing a decision that specifies facially legitimate reasons for denying the petition.[7]

---

[7] *See, e.g., Gebhardt*, 879 F.3d 980 at 988; *Bremer v. Johnson*, 834 F.3d 925, 932–33 (8th Cir. 2016); *Zizi v. Bausman*, 306 F. Supp. 3d 697, 708–09 (E.D. Pa. 2018), *aff'd sub nom. Zizi v. Field Office Dir.*, 753 F. App'x 116 (3d Cir. 2019); *Bourdon v. Sessions*, No. 9:17-CV-80207, 2017 WL 5187833, at *6 (S.D. Fla. Nov. 9, 2017); *Ali v. United States*, No. 15-CV-201-AJ, 2016 WL 3190190, at *8 (D.N.H. June 7, 2016), *aff'd*, 849 F.3d 510 (1st Cir.

For the reasons already stated, these three procedural safeguards have been satisfied by USCIS and BIA here. Each of the NIDs and NIRs issued by USCIS to plaintiff listed clearly and exhaustively the derogatory information upon which USCIS intended to rely, such that plaintiff could clearly understand the information he needed to rebut with exculpatory evidence. And after each of these notices, USCIS afforded plaintiff with the appropriate amount of time to submit rebuttal in response to the NIDs and NIRs. Finally, at the conclusion of each stage of the adjudication, both USCIS and BIA issued detailed, well-reasoned decisions explaining the reasons, and information supporting those reasons, for the conclusion that Adubofour's prior marriage was fraudulent. And, as already discussed, *supra* part II.A, those reasons were facially legitimate as there was substantial evidence to support USCIS and BIA's conclusion regarding marriage fraud. Accordingly, it is abundantly clear that throughout his lengthy and numerous proceedings before USCIS and BIA, plaintiff received the full range of procedural protections to which he was entitled with respect to the adjudication of his I-130 alien relative petition.

## III.

This is an unfortunate case. There is no reason to doubt that Adubofour's present marriage to plaintiff is legitimate, and it cannot be denied that BIA's denial of plaintiff's alien relative petition has grave implications for Adubofour's ability to secure American citizenship and thus for the couple's ability to reside together in this country. But these consequences stem from Adubofour's choice, reflected in the administrative record, to attempt to circumvent immigration laws by entering into a sham marriage with King and from Congress's determination that entering into a fraudulent marriage renders an alien permanently ineligible for an immediate relative visa. *See* 8 U.S.C. § 1154(c). Although it is unfortunate that plaintiff and Adubofour's marriage must

2017); *Desmore v. Dep't of Homeland Sec.*, No. CV G-14-191, 2016 WL 561176, at *4–5 (S.D. Tex. Feb. 12, 2016); *Armah-El-Aziz v. Zanotti*, No. 1:15-CV-261 JCC/MSN, 2015 WL 4394576, at *7–8 (E.D. Va. July 16, 2015).

be strained in this regard, review of the administrative record makes clear that Adubofour's choice dooms plaintiff's claim here.

An appropriate Order will issue.

Alexandria, Virginia
April 8, 2019

/s/
T. S. Ellis, III
United States District Judge